**In re Robert SHERIDAN, Debtor.**

**CITY NATIONAL BANK OF FLORIDA,**
**Plaintiff–Appellant,**

v.

**Robert SHERIDAN, Defendant–Appellee.**

**Nos. 94 C 5461, 91 B 8998 and 91 A 930.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 7, 1994.

Catherine L. Steege, Jenner & Block, Chicago, IL, for plaintiff-appellant.

Louis W. Levit, Patrick S. Munzer, Brian L. Shaw, Ross & Hardies, P.C., Chicago, IL, for debtor/defendant-appellee.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on an appeal filed by the plaintiff-appellant, City National Bank of Florida, following a ruling by the bankruptcy court in favor of the debtor, Robert Sheridan. For the reasons set forth below, we affirm the ruling of the bankruptcy judge.

## BACKGROUND

On May 19, 1994, this court issued an opinion affirming the bankruptcy court's entry of a directed finding on Counts I through III of the plaintiff's Amended Complaint and remanding the case for further factual findings on Count IV. In that the background of the case was fully detailed in that May 19, 1994 opinion, our recitation of the facts here will be brief.

The plaintiff-appellant, City National Bank of Florida ("the Bank") was a creditor of defendant-appellee Robert Sheridan ("Sheridan") when Sheridan declared bankruptcy. The Bank had loaned money to Sheridan on three occasions, pursuant to a line of credit. Each disbursement (i.e., "draw") made by Sheridan required Bank approval. Sheridan made three draws on the line of credit: one for $300,000 and two for $200,000. Sheridan repaid one of these draws for $200,000, and eventually paid $100,000 toward the $500,000 outstanding balance from the other two draws. Ultimately, however, he defaulted on $400,000 worth of loans. Two months before he filed for bankruptcy, the Bank obtained a judgment against Sheridan for $438,385.69. The Bank then filed a complaint with the bankruptcy court, seeking to have Sheridan's debt to it declared non-dischargeable in bankruptcy.

The first three counts of the Amended Complaint allege that Sheridan made materially false representations about his financial condition upon which the Bank relied in making the loans to Sheridan. Count IV of the Amended Complaint alleges that Sheridan obtained one of the loans (the "August draw") under false pretenses as to the intended use of the money. The bankruptcy court entered judgment in favor of Sheridan on all four counts. On May 19, 1994, this court affirmed the bankruptcy court's findings for Counts I through III and remanded the case for further factual findings on Count IV. On July 19, 1994, Supplemental Findings were issued by the bankruptcy court, affirming its original findings regarding Count IV. The Bank now appeals these Supplemental Findings of the bankruptcy court, arguing that the findings were erroneous both as a matter of fact and law.

## DISCUSSION

The Bank contends that the Supplemental Findings were incorrect as a matter of law for two reasons. First, the Bank asserts that the ruling of the bankruptcy court has the legal effect of imposing a duty upon a creditor to require segregation of a loan's use in order to prevail on a false pretenses claim. The Bank presented us with this precise argument prior to our May 19, 1994 opinion. We disagreed with the plaintiff's argument at that time, and we find no merit in it now. From a reading of the entire ruling of the bankruptcy court, we do not find that any additional requirement for segregation of funds was engrafted as an element of the plaintiff's claim.

As its second argument that the bankruptcy court's findings were in error as a matter of law, the Bank contends that the actual use of the loan proceeds should have been considered by the bankruptcy court as evidence of Sheridan's fraudulent intent. Specifically, the Bank contends that because (1) Sheridan knew that the Bank would not lend him money to repay other loans and that (2) Sheridan needed to borrow money on an unsecured basis to keep his over-leveraged real estate business afloat, Sheridan's actual use of the loan proceeds to cover overdrafts and repay other obligations was therefore legally relevant. An examination of the record, however, indicates that the bankruptcy court appropriately considered all relevant factors in making its determination. With regards to Sheridan's actual use of the August draw, the court specifically found that:

> Sheridan did in fact use the proceeds of the May draw and $100,000 of the proceeds of the August Draw for the purposes set forth in the respective draw requests. The balance of the proceeds of the August Draw would have replenished the Edgemont account from which deposit on the Aurora property had been made shortly before the August Draw. This practice of advancing funds and then replacing those funds with a loan does not evidence either an intent to deceive or an actual deception. The effect on City National is the same as if the proceeds of the August Draw had

been used directly for the deposit. Given City National's practice of depositing funds into a general account and the fungibility of money, and given the volatility of the Aurora transaction, City National has not proven that the Debtor did not intend to use the proceeds of the August Draw for the stated purposes. Supplemental Findings at ¶ 26. We find that Sheridan's actual use of the loan proceeds was appropriately contemplated by the bankruptcy court. The Bank may disagree with the bankruptcy court's assessment of the evidence before it, but we find no legal error as to how its conclusions were reached.

■ In addition to the purported errors of law, the Bank contends that the bankruptcy court made clearly erroneous findings of fact which warrant its reversal. Under Rule 52(a) of the Federal Rules of Civil Procedure, "[f]indings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In applying this clearly erroneous standard, a reviewing court is not entitled to reverse a finding of the trier of fact simply because it is convinced that it would have decided the case differently. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). If the trial court's account of the evidence is plausible in light of the record when viewed in its entirety, then the reviewing court may not reverse it, even though the reviewing court would have weighed the evidence differently had it been sitting as the trier of fact. *Id.*, at 574, 105 S.Ct. at 1511–12.

Based upon its review of the record, the bankruptcy court specifically found that at the time Sheridan executed the August draw, he intended to use the proceeds for earnest money deposits on the Carol Stream and Aurora properties. Supplemental Findings at ¶ 25. Further, the bankruptcy court did not find the manner in which these August draw proceeds were utilized to be inconsistent with Sheridan's stated intentions. *See* Supplemental Findings at ¶ 26. As such, the August draw request was not made with the intent to deceive or defraud the Bank. Supplemental Findings at ¶ 28. We note that

the Supplemental Findings of the bankruptcy court are replete with references in the record to support its factual findings. Given the high measure of deference owed to the finder of fact by the reviewing court, we cannot therefore conclude that the Supplemental Findings of the bankruptcy court were clearly erroneous. Finding no error, we affirm the findings of the bankruptcy court with regard to Count IV of the Amended Complaint.

## CONCLUSION

For the reasons stated above, we affirm the bankruptcy court's entry of a directed finding on Count IV of the Amended Complaint.